Good morning Your Honors, my name is Assistant State's Attorney Siri London, representing the people. Before we proceed, a little bit of a housekeeping matter. The State's motion to sign additional authority will be granted. The time to respond was yesterday and we didn't receive anything from a defender. So with that, 15 minutes apiece, time for rebuttal. How much time would you like? I'll take five, but I'll probably need less. Okay, all right, thank you very much. Thank you. All right, Counsel, we'll proceed. All right, for your record, Adrian River, on behalf of Edwin Paniagua, good morning, Your Honors and Counsel. I plan on addressing Issue 1 today, but I would be happy to answer questions on the other issues as well. In Issue 1, I challenge the denial of the motion to suppress on the basis that Edwin did not intelligently waive his constitutional rights. That is premised on the basic fact that if you can intelligently waive rights, if you fully understand the concept of what it is to have a right, including that you can't be penalized for exercising it. Didn't the officer take particular care to make sure that he understood what he was stating? Actually, I don't think the record does show particular care. They asked him whether he understood what the rights meant. The only clarification by the officer, he said, do you understand when it's used against you, like you mean in court, yeah. I mean, there really wasn't an in-depth discussion of it, but the officers didn't discuss, did not inform him that he couldn't be penalized if he decided not to talk to the police. And that may be something that we as attorneys and judges would take for granted, but this is apparently a common misunderstanding on the part of juveniles. And I think it's important to remember here the burden of proof. It starts out with the state has to make a prima facie case. Then the defense produces some evidence of non-intelligent waiver, and then it reverts back to the state. So here we have Edwin telling both experts essentially the same thing, using a whole different language, that he thought he could get in trouble, he thought he'd be punished if he didn't talk to the police. So that's uncontested. He was told he could stay silent. Is that correct? Right, but he didn't understand that if he decided to not speak to the police, that that what does a right mean? And many juveniles don't understand this. And so the state didn't then rebut, didn't meet heavy burden of proof here. In fact, the statement to the state's expert wasn't elicited until cross-examination, and then she admitted that she never even put that in her report. And then furthermore, she said, well, you know, that he had this actually solidifies my opinion and shows that he weighed his options, but he only weighed his options with his fundamental misunderstanding of what it meant to exercise his rights. So her opinion does not square with the fact that she herself relied on, that both experts relied on. And therefore, the trial court's finding, based on the state's expert, is unreasonable and against the manifest weight of the evidence. Well, it's one of the circumstances. I mean, the trial court examined all the circumstances, the totality of the circumstances. I think that the trial court's ruling primarily was focused on whether Edwin understood the meaning of the words, and the court totally ignored the uncontested fact that he didn't, that he had this misunderstanding of what would happen if he decided not to talk to the police. And that fact, as a matter of law, requires suppression of that confession. But what about the fact that, okay, maybe, you know, his, according to the experts, his And I believe the expert indicated the Miranda warnings are written for someone in the sixth-grade level to be able to understand, yet he read at the twelfth-grade level. So doesn't that factor in as well in terms of whether or not he's going to decide, did he really understand or not? I think those factors, I mean, I would dispute that those are really significant to this inquiry. First of all, Well, you're making the argument that he didn't understand. He didn't understand. I think that his low IQ, sixteenth percentile, is consistent, but also just the fact of his age. So I'm not relying entirely on, you know, he has a low IQ. And also, I believe I'm reading the record correctly, he had twelfth-grade readability two years later at the time of his arrest. I don't believe they testified that at the time, you know, he just finished ninth grade. So those, that cognitive issue relates to whether he understood the words, but they're consistent with his basic misunderstanding that something had happened to me If I don't talk to the police, I feel like I have to cooperate. The courts are to indulge every reasonable presumption against waiver, and this court should find that Edwin didn't intelligently waive his rights here. No further questions? I'll save a couple minutes for Mark. We'd like to talk about the retroactive issue as to the transfer. Okay. And should we find that the transfer statute applies here? What do you believe the remedy should be? The remedy, well, the remedy would go back, and the state would have the opportunity to file a petition for discretionary transfer, but you would still have to address issue one, because that would come up again. And that case is obviously pending in the Supreme Court. Okay. Hunter. Hunter is, you know, it's very public that I was the author of Hunter. But my concern, should this court reconsider Hunter, is what to do if the transfer statute applies, which was one of my considerations. I'm kind of a practical person, and when I considered Hunter, obviously the Supreme Court had decided Howard. Right. But what to do? I mean, you have a defendant who was tried and convicted. What is the proper remedy? What can practically and legally be done? Well, I think that the fact that he was convicted doesn't prevent fashioning a remedy of it going back, reversing the adult conviction and sending it back to the juvenile court for proceedings there. So you're suggesting that the conviction be vacated by us? If he was improperly tried in adult court, yes, I believe that's right. It's not a remedy that's been, I mean, there isn't a total consistency in those cases, the appellate court cases that have found that the transfer statute applies retroactively. It appears, I think, predominantly the courts have vacated the sentence, which I'm not quite sure why that is done and that it's remanded. The relief we asked in the briefs was to reverse the conviction, enter juvenile adjudication in its place, remand for resentencing. We would enter a juvenile adjudication. Or the trial court to do so. Which trial court? The juvenile judge who would be presiding over the case on remand.  No, thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Again, my name is Assistant State's Attorney Siri London here on behalf of the people of the State of Illinois. With regard to the first issue which has been argued here today, the trial court properly denied defendant's motion to suppress statements where the court properly considered the totality of the circumstances. And in considering the totality of the circumstances, the trial court considered the characteristics of the defendant, his age, and the details of the interrogation. Now, specifically with regard to the details of the interrogation, the trial court was fully aware that the defendant, who was only two months shy of his 16th birthday and had been previously advised of his Miranda rights prior to this arrest, was advised of his Miranda rights in this situation by a youth officer with his mother present who took great care and time to carefully explain the Miranda rights, paraphrase those rights, and to ensure that the defendant understood each and every Miranda right. So we don't have an issue here that this confession was coerced. Absolutely not. Or that it was involuntary because of the length of time or the circumstances or the condition in terms of where the confession was given. Correct. That has not been raised. What about the issue that the mother actually wasn't present? They were already talking to him before she arrived at the police station, and we don't really know what happened at that period of time until the mother arrived. What about that issue, that she wasn't totally present during the time when he was talking to police? That issue has not been raised, but specifically with regard to that, the defendant was only considered a witness at the time, and the trial court very carefully and very specifically found that the defendant was not in custody at that time for purposes of Miranda. The moment that the defendant implicated himself and was now considered a suspect, the interview stopped and the mother was called and they brought her to the station. And it was at that point that the defendant was administered the video. There was a video recording of the confession. The defendant was administered his Miranda rights with his mother present and was very clearly and very detailed in paraphrasing what his rights were. The defendant at that time specifically said as to each right that he understood, and in fact for a few of the rights he explained to the youth officer what the right meant, that it means I don't have to talk. Another time when the defendant stated what the rights meant, that anything I say can be used against me. The video recording we would invite this court to look at, which the trial court looked at several times and carefully considered. And so did the experts. And so did the experts. And the trial court, in looking at the videotape recording, showed that it did verify the defendant understood his Miranda rights. The expert, Dr. Messina, who is the court-appointed expert, very carefully looked at the video, went over it with the defendant, the video, and the defendant acknowledged that the youth officer paraphrased the Miranda rights to the defendant and that he indicated he understood what the youth officer said. Dr. Messina also explained that the manner in which the youth officer explained the Miranda rights was such a way that gives an easier understanding of what the Miranda rights entail. But the other expert had a different interpretation of the. Yes, she did. And the trial court viewed and weighed both of the experts. And it was up to the trial court to determine which expert she found to be the better expert. The trial court in this case, after weighing both extensive testimonies from each expert, found that the court-appointed expert was more experienced and was a better expert. Now, specifically, as to regard to the statement which the defendant maintains, establishes that he absolutely could not have understood his Miranda rights, is incorrect and unsupported. This court must look at, at the time that the defendant made that statement, oh, if I didn't remain silent and they found out later I'd be in more trouble, we have to look at that statement in context. That statement is made to the defense expert, the paid retained defense expert, who was evaluating the defendant for purposes of preparation and support for his motion to suppress. Defendant knew this. Defendant knew that Dr. Mason was the defense expert evaluating him to determine if he understood his Miranda rights. But we also have to look at that statement in contrast to then considering the totality of the circumstances and look at it in contrast to what he actually said and what he actually did and what actually happened at the time that he was advised of his Miranda rights. At the time that he was advised of his Miranda rights, the youth officer specifically told the defendant, you don't need to talk to me or the other detectives here. And he went on to painstakingly explain the Miranda rights. Defendant explained that he understood those rights. He never appeared to be alert. He was cooperative. He was relaxed. Every indication and all the evidence leads at the time that he was given his Miranda rights, he understood those rights and he intelligently and knowingly waived those rights. Also, it is important to note that Dr. Messina, the court-appointed expert, she had gone through every single right with the defendant. At the time, the defendant was able to explain what the rights were. Again, that was at the time that he was being interviewed years later. But most importantly, Dr. Messina, in addition to interviewing the defendant, she looked at the video with the defendant and saw that any claim that he didn't understand was contrary to what was seen in the video and what the defendant said and what the defendant did. And with regard to any statements that were made to Dr. Messina regarding defendants thinking he would be punished or in trouble, Dr. Messina found that the defendant was able to understand each and every right. He explained what the rights were. And she found that any statement with regard to being punished or being in trouble was more not him understanding that he could remain quiet, that he could remain silent, but him weighing his options and determining what to do and that it was in his best interest to talk to the police in this case. We would maintain that the trial court absolutely, properly denied the defendant's motion to suppress where the totality of the circumstances and everything that the trial court considered showed that the defendant knowingly, intelligently waived his Miranda rights here.  We are very aware that you wrote the Hunter decision. That I'm out there on an island? Well, not according to us. We can trust it. You're always independent. You're a less survivor with me? We would maintain that the defendant is not entitled to a discretionary transfer hearing in juvenile court. This case is completely different than the circumstances in Howard. Howard was a case that was pending in the circuit court. It was feasible. They could do it. I obviously see the reasonableness of those arguments before Howard, but Howard does shed some light on how these issues should be resolved. But again, I have to ask you, and I know you're out here on the island with me, what to do if myself and my colleagues decide this is retroactive? That's exactly the problem. Howard is different. It's feasible. It can be done. It was a case pending in the circuit court. Cases pending on direct appeal, it's just simply not feasible. Defendant was tried, convicted, and sentenced in 2004. The amendments became in effect January of 2016. Even under the discretionary transfer statute, or under the discretionary transfer statute, we can't even comply with the language because there's no proceedings anymore. The discretionary transfer has to happen prior to the proceedings. It may be a little odd, but the problem is that obviously this court has the authority to remand it, so now we're back. What do we do? It's tricky because then how do the trial courts, whether it's the circuit court, an adult court, or the juvenile court, even comply with the statutes? Because even the only part of the statute that talks about post-trial is under the excluded jurisdiction where if a defendant had been found guilty of not one of the mentioned offenses, then the state within 10 days would have had to petition the court to have the defendant sentenced in an adult court. So you see that there's an impossibility. It's not feasible. How old is this defendant now? This defendant is 23, so he doesn't even fit under the... What would happen if the state... Well, you know, probably what would happen, which in our opinion would be terrible, this is a defendant who's been tried, convicted, and sentenced for murder with exceptional... Brutal and heinous... Brutal and heinous, indicative of long-time cruelty. He was sentenced to 26 years. And he actually has another sentence as well. This defendant, if we were to remand this to juvenile court, he would be released, even though there's no trial error that occurred here, and his conviction should be affirmed. So the people would maintain that the amendment is not retroactive in cases under Act of Appeal. It's a problem. It was an issue for me back in Hunter. But what has been going on in these cases that have been remanded by the appellate court? You know, I don't know what's been happening with every case. I think a lot of cases have been staying... We have filed PLAs in every case that I know of. And it's sort of been held in abeyance, waiting for a decision on Hunter. Because truthfully, I'm sure that this specific factual situation is not the only one where we would have convicted murderers then released if we were to say that it's retroactive cases on direct appeal. And as we have maintained strongly, there is no error here. So defendant should remain a convicted murderer sentenced to 26 years. Unless there's any other questions, the people would argue that based on our arguments made here today and those made in our brief, we would ask this honorable court to request that you Thank you so much. Thank you. A couple points. Counsel relies heavily on the video. The video doesn't show whether he believed he could be punished if he exercised his right to remain silent. We can't read his mind from the video. So all we can tell from the video is that he seemed to have a basic understanding of what the... that something can be used against me. He had a basic understanding of what the rights meant. But we can't, that can't be proof of what he, of this fundamental misunderstanding. And counsel seems to indicate that because the context that he told defense expert, I guess she's implying that it's not credible. Well, he told both experts, the state experts paid by the state, the defense experts, so everyone's paid by somebody. And nobody found it credible. And, in fact, as I indicated before, the state's expert relied on that statement. She thought that helped her opinion. And I think that's, that was incorrect, that therefore the trial court's reliance on that state's opinion makes his decision against the manifest weight of the evidence. And that he, looking at his conduct during the tape, was not inconsistent. He seemed to answer yes, okay, fine, I understand that. It's not inconsistent with him misunderstanding what it means to have a right. You can't read his mind from the video. That's all. Thank you very much. Thank you. Thank you, counsel. All right, we want to thank counsels for a well-argued case. And we will take it under advisement. Thank you. Court is in recess.